UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLIE MERTES,<br><br>　　　　　Plaintiff<br><br>　　　v.<br><br>INTERNAL REVENUE SERVICE,<br><br>　　　　　Defendant | CASE NO. 1:19-CV-1218 AWI SKO<br><br>ORDER REGARDING MOOTNESS FOLLOWING DISCLOSURE OF DOCUMENT<br><br>(Doc. Nos. 35, 36) |

　　　This is s Freedom of Information Act ("FOIA") case brought by Plaintiff Billie Mertes against Defendant the Internal Revenue Service ("IRS"). Mertes seeks production of an allegedly fraudulent IRS Form 709 gift tax form (hereinafter "the Form 709"). On August 31, 2020, the Court issued an order of clarification. As part of that order, the Court required the parties to brief the effect on this case of the IRS producing a redacted version of the Form 709. That briefing has now been received. As part of the briefing, the parties acknowledge that the IRS has produced an unredacted copy of the Form 709. However, the parties dispute whether this case is now moot.

*Plaintiff's Position*

　　　Mertes argues that the Form 709 is missing pages. Specifically, the Form 709 attached and incorporated by reference an IRS Form 706. The IRS has refused to provide the referenced Form 706. The IRS argues that the attached Form 706 is not part of the Form 709 and thus, is outside the scope of the FOIA request and the Court's jurisdiction. However, this case involves two FOIA requests, one made in May 2017 for "all documents" regarding the Form 709 and the gift tax periods of 2012 and 2013, and one in May 2019 for the fraudulent Form 709. The broader May 2017 request is part of this case. Further, the Form 709 shows that whoever prepared that form intended for the referenced Form 706 to be a part of the Form 709. The referenced Form 706

provides information requested by Part1B of the Form 709's Schedule A.  Common sense dictates that information too voluminous to fit in a space provided by a particular tax form is nevertheless still part of the tax form.  Other IRS forms and their accompanying instructions, such as a Form 1040, instruct individuals to attach separate pieces of paper as needed in order to file a complete form.  Also, the six year statute of limitations under Internal Revenue Code § 6501(e) for when a taxpayer omits certain amounts from a gift tax return specifically refer to statements "attached to a return."  Also, in *Lawrence v. Commissioner*, 258 F.2d 562 (9th Cir. 1958), the Ninth Circuit had no problem with the fact that a disclosure was made by a taxpayer through a separate document attached to an IRS form.[1]  Therefore, the failure to release the attached Form 706 remains an outstanding issue.  Finally, Mertes argues that she may obtain reasonable attorneys' fees if it is determined that she substantially prevailed.  Mertes contends that she can show that she is entitled to attorneys' fees and thus, the issue of attorneys' fees is outstanding.  Because of these outstanding issues, the production of the Form 709 without the attached Form 706 does not moot this case.

   *Defendant's Argument*

   The IRS argues that its production of the Form 709, without the referenced Form 706, moots this case.  Mertes exhausted her administrative remedies with respect to her May 2019 FOIA request, which sought only the Form 709.  FOIA contains no definition of "record."  The Department of Justice has issued Guidelines ("the DOJG") for federal agencies to consider when determining whether it is appropriate to divide documents into discrete records.  Application of the DOJG shows that the referenced Form 706 is a separate document from the requested Form 709.  Mertes only requested the Form 709.  If she intended to obtain related documents, she could have easily said so.  The Form 706 is discrete from the Form 709 as the two forms are submitted by different taxpayers and deal with different taxation issues.  Because the Form 706 is a separate document, production of the Form 709 by itself fully complied with Mertes's FOIA request.  To

---

[1] The Court has reviewed *Lawrence*.  It is a short opinion (less than a page worth of analysis) in which the Ninth Circuit reversed a Tax Court order based on then recent Supreme Court authority.  See Lawrence, 258 F.2d at 562-63.  There is no discussion whatsoever about "attachments" to tax forms, and nothing to indicate that the issue was even raised.  See id.  *Lawrence* is not on point.

permit Mertes to expand her FOIA request to include the Form 706 would result in additional review, searches, and costs for the IRS.  Mertes's remedy is to file a new FOIA request, not expand the exhausted request in this case.  FOIA does not permit expansion or making additional requests after litigation begins.  Further, producing the Form 709 without the referenced Form 706 does not destroy the integrity of the Form 709 or render the Form 709 fragmentary.  A taxpayer who files an IRS Form 709 is not necessarily required to also file an IRS Form 706.  The IRS has always considered these two forms to be distinct, although related.  Consistent with that view, the IRS has not identified the Form 706 as a responsive document in this case.  While courts who have examined an analogous situation with respect to e-mails have required the production of an e-mail's attachments, the requests in those cases essentially requested "all responsive records."  In contrast, Mertes only requested the Form 709.  Production of only the Form 709 is responsive to Mertes's request and does not destroy public trust in Government; a specific document was requested and produced.  Since one document was requested and one document was produced, this case is moot.

*Discussion*

Mootness deprives a court of subject matter jurisdiction.  See In re Burrell, 415 F.3d 994, 998 (9th Cir. 2005); White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  The general rule is that once an agency responds to a specific FOIA request by producing all non-exempt documents, "the specific FOIA claim is moot because the injury has been remedied."  Civil Beat Law Ctr. for the Pub. Interest, Inc. v. Centers for Disease Control & Prevention, 929 F.3d 1079, 1084 (9th Cir. 2019); Hajro v. U.S. Citizenship & Immigration Servs., 811 F.3d 1086, 1103 (9th Cir. 2016).  Here, Mertes argues that the case is not moot for two reasons:  (1) she will be seeking attorneys' fees under 5 U.S.C. § 552(a)(4)(E)( i), and (2) not all responsive documents have been disclosed.

    1.      Attorneys' Fees

A FOIA complainant is eligible for attorneys' fees if she has "substantially prevailed."  5 U.S.C. § 552(a)(4)(E); First Amendment Coal. v. United States DOJ, 878 F.3d 1119, 1131 (9th Cir. 2017).  As a general matter, "a claim for attorney's fees is not part of the merits of the action to which the fees pertain."  Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988); Intel

3

1  Corp. v. Terabyte Int'l, Inc., 6 F.3d 614, 617 (9th Cir. 1993).  An award of attorney fees, including
2  fees under § 552(a)(4)(E), "raises legal issues collateral to and separately appealable from the
3  decision on the merits."  Oregon Nat. Desert Ass'n v. Locke, 572 F.3d 610, 614 (9th Cir. 2009).
4  Therefore, issues surrounding the award of attorneys' fees are usually handled in post-litigation
5  motions after the merits have been resolved.  See Center for Biological Diversity v. U.S. Fish &
6  Wildlife Serv., 703 F. Supp. 2d 1243, 1245 (D. Colo. 2010) (resolving a motion for attorneys' fees
7  following settlement of the merits of a FOIA complaint); Dixon v. Albemarle Corp., 2005 U.S.
8  Dist. LEXIS 47846, *2-*3 (S.D. Tex. Apr. 22, 2005) (explaining that because attorneys' fees are
9  typically decided by post-trial motion in federal court, attorney's fee experts are not subject to the
10 same rules as testifying experts).

11     Here, Mertes does not actually explain how any issues regarding § 552(a)(4)(E) attorneys'
12 fees would prevent the merits of her FOIA complaint from being moot.  This is not surprising.
13 Pursuant to *Budinich* and *Locke*, it is clear that attorneys' fees under § 552(a)(4)(E) are not related
14 to the merits of Mertes's FOIA claim.  As a matter collateral to the merits of Mertes's FOIA
15 claim, any issues regarding attorneys' fees under § 552(a)(4)(E) will not prevent the substance of
16 Mertes's FOIA complaint from becoming moot.  See Budinich, 486 U.S. at 200; Locke, 572 F.3d
17 at 614.  Therefore, Mertes's invocation of § 552(a)(4)(E) does not prevent this case from
18 becoming moot due to the disclosure of the Form 709.

19     2.     Responsive Documents

20     The parties agree that Mertes exhausted her administrative remedies with respect to the
21 May 21, 2019 FOIA request.  That request sought "a copy of the fraudulent Form 709 (Gift Tax
22 Return) submitted to the IRS for filing for the 2012 calendar year."  Doc. No. 1 at ¶¶ 5, 8, 18; Doc.
23 No. 36-1 Ex. A.  The "four corners" of the Form 709, i.e. the Form 709 without the attached Form
24 706, has been produced.  As to the Form 709 itself, exclusive of any attachments, this matter is
25 moot.  See Civil Beat Law Ctr. for the Pub. Interest, Inc. v. Centers for Disease Control &
26 Prevention, 929 F.3d 1079, 1085-86 (9th Cir. 2019); Papa v. United States, 281 F.3d 1004, 1013
27 (9th Cir. 2002).  The issue is whether a document attached to the Form 709 is a separate record for
28 purposes of FOIA.

The attached document is an IRS Form 706.  A Form 706 is an Estate Tax Return.  See Zeir v. United States, 80 F.3d 1360, 1362 (9th Cir. 1996); Finfrock v. United States, 860 F.2d 651, 653 (C.D. Ill. 2012).  The IRS Form 706 at issue (herein after "the Form 706") is identified on Page 2 of the Form 709, which is the Form 709's "Schedule A."  Part 1 of the Schedule A is entitled "Gifts Subject Only to Gift Tax."  Part 1 has 8 columns.  Column A is entitled item number; Column B requests the donee's name and address, relationship to the donor, description of the gift, the CUSP number if the gift was of securities, and the EIN if a closely held entity is involved; Column C is "solid" and neither requests information nor has a place to provide information; Column D requests the donor's adjusted basis of the gift; Column E requests the date of the gift; Column F requests the value of the gift; Column G deals with split gifts; and Column H requests the net transfer value of the gift.  Six of the seven columns in Part 1 of the Form 709's Schedule A have information.  Column A reads, "1."  Column B reads. "5/6 of amount shown on the attached form 706, pg 2, part 4, item 4c."  Column D reads, "9,432,077."  Column E reads, "4/12."  Columns F and G are filled in with the same figure as Column D.   There is no other information in Schedule A's Part 1, and the Form 706 is not identified further in the Form 709.

      The parties acknowledge that the term "record" is not identified in FOIA.  Further, neither party has cited the Court to any authority with respect to how to treat attachments to records.  The IRS contends that application of the DOJG[2] yields the conclusion that the Form 706 is a separate document that is not part of the Form 709.  Embedded within the IRS's argument is reliance on cases that address attachments to requested e-mails.  The Court will examine both the DOJG and the e-mail attachment cases separately.  However, the Court does so with the overarching understanding that a plaintiff's FOIA records request is to be construed liberally in order to further FOIA's core purpose – to allow the public to find out what the government is up to.  Yagman v. Pompeo, 868 F.3d 1075, 1079-80 (9th Cir. 2017).

      a.    DOJG

      The DOJG explains that "scoping" questions can be difficult because a responsive record

---

[2] DOJ, OIP Guidance: Determining the Scope of a FOIA Request, FOIA Update, Vol. XVI, No. 3 (1995) can be found at https://www.justice.gov/oip/blog/foia-update-oip-guidance-determining-scope-foia-request.

1 could deal with a range of multiple subjects and contain subparts that cover multiple complex
2 matters, some of which have nothing to do with the FOIA request at issue.  See DOJG.  In
3 evaluating such "documents that cover multiple, unrelated topics," i.e. multi-subject documents,
4 the DOJG advises federal agencies when evaluating the scope of a FOIA request to consider a
5 number of considerations.  American Immigration Lawyers Ass'n v. Executive Office for
6 Immigration Review, 830 F.3d 667, 678 (D.C. Cir. 2016).  Those considerations have been
7 summarized as "the requester's intent, maintaining the integrity of the released documents, the
8 scope of the request, the agency's own knowledge regarding storage and maintenance of
9 documents, efficiency, cost, resource allocation, and maintaining the public's trust in
10 transparency."  Shapiro v. CIA, 247 F. Supp. 3d 53, 74-75 (D.D.C. 2017); see Brady Ctr. to
11 Prevent Gun Violence v. United States DOJ, 410 F. Supp. 3d 225, 236 (D.D.C. 2019).

12       Here, it is far from clear that the DOJG has any application to this case.  The Form 709 is
13 not voluminous or a multi-subject document, such as diplomatic transmissions, law enforcement
14 investigations, comprehensive memorandum, manuals, or voluminous files.  E.g. Brady Ctr., 410
15 F.Supp.3d at 236 (describing multi-subject documents); Shapiro, 247 F.Supp.3d at 59-61, 73-74
16 (same); DOJG.  There is essentially one subject to the Form 709, how much gift tax is owed.
17 Each line of the Form 709 requests various pieces of information, but each piece of information is
18 designed to compute gift tax.  Nevertheless, assuming that the DOJG applies to the Form 709, the
19 relevant considerations do not support treating the attached Form 706 as a separate record from the
20 Form 709.

21       (1)    Requester's Intent

22       Mertes's May 2019 letter to the IRS from her counsel clearly explained that Mertes
23 believed that someone had filed a fraudulent gift tax return and used her name and social security
24 number without her knowledge or consent.  See Doc. No. 36-1 at Ex. A.  The term "identity theft"
25 expressly appears on the letter.  Id.  It is apparent that Mertes believes that she is the victim of a
26 crime.  As such, it is entirely reasonable that Mertes would want any attachment to the Form 709
27 that was submitted without her knowledge or consent because the attachments would be used to
28 help establish both the basis for, and amount of, the improper gift tax owed.  To think that a

person who believes that fraud and identity theft have occurred would not intend for every document attached to an unauthorized tax form to not be produced is unrealistic and unreasonable. The Court concludes that Mertes's May 2019 FOIA request was intended to include the Form 709 and the attached Form 706.

### (2) Maintaining the Integrity of the Form 709

In addition to being attached to the Form 709, the Form 706 is expressly referenced and relied upon in Part 1, Column B, of the Form 709's Schedule A.  Column B requests the most detailed information of any of the Part 1 columns.  As described above, Column B requests the donee's name and address, relationship to the donor, description of the gift, the CUSP number if the gift was of securities, and the EIN if a closely held entity is involved.  The Form 706 is attached to and referenced in the Form 709 because the person who submitted the Form 709 clearly intended the Form 706 to provide the information requested in Column B.  Without the information provided in the Form 706, there are merely numbers in Part 1 of the Schedule A and no information under Column B.  That is, the information requested by Column B and provided through the referenced Form 706 would otherwise be completely missing from the Form 709. Ordinarily, the Court would agree that IRS Forms 706 and 709 are separate forms that deal with separate taxation issues.  However, it is the fact that the Form 706 is referenced in the Form 709 and was intended to provide necessary and requested information under Column B that is the critical distinction.[3]  These are not two wholly separate documents, the one expressly references and relies on the other to provide information. Cf. Parker v. United States DOJ, 278 F.Supp.3d 446, 451-52 (D. D.C. 2017) (holding that a letter and its attachment were a single record because the letter "itself touches on the subject matter of the attachment and refers the recipient to examine its contents.").  Therefore, the Form 706 is a critical component or integrated part of the Form 709, and to treat the Form 706 as a "separate record" would not maintain the integrity of the Form 709.

### (3) Scope of the Request

The scope of the May 2019 FOIA request is not broad or sweeping, it merely seeks a copy

---

[3] The IRS instructs that each gift is to be listed on the IRS Form 709 Schedule A.  See www.irs.gov/instructions/i709. If the Form 706 is disregarded as an unrelated and separate document, then the Form 709 is not properly filled out. See id.

7

1  of the "fraudulent From 709." As discussed above, normally IRS Forms 706 and 709 are separate
2  and distinct forms. Simply looking at the two forms in isolation would mean that the Form 706 is
3  outside the scope of the May 2019 FOIA request. However, because the Form 706 is attached to
4  the Form 709 and is intended to supply necessary information, the normal separate and distinct
5  nature of the IRS Forms 706 and 709 does not control. So viewing the Form 706 as an integrated
6  part of the Form 709, the Form 706 would be within the scope of Mertes's request.

(4)   IRS's Knowledge Regarding Document Storage and Maintenance

8      The IRS argues that it has never identified the Form 706 as a responsive document and that
9  its has always treated IRS Forms 706 and 709 as distinct. First, that the IRS did not identify the
10 Form 706 as responsive in this case reflects very little. A single instance of conduct generally is
11 not enough to show a general practice or policy. Moreover, how the IRS chose to respond to
12 Mertes's May 2019 FOIA request does not speak to document storage practices. Second, as
13 explained above, the Court agrees that in general IRS Forms 706 and 709 are separate and distinct
14 records. But this is not a case where Mertes is simply asking for a random IRS Form 706, or even
15 the 2012 IRS Form 706 that she may (or may not) have submitted.[4] Mertes is requesting the
16 specific Form 706 that was attached to, referenced in, and relied on in the Form 709. The IRS
17 does not argue that it stores documents or forms that are attached to and referenced in IRS Form
18 709's separately from the form itself. In fact, the Form 706 was provided to the Court as part of
19 the in camera inspection of documents. The Form 706 was directly behind the Form 709. There
20 is nothing before the Court that supports the proposition that the Form 706 and Form 709 were not
21 stored and maintained together.

(5)   Efficiency, Cost, & Resource Allocation

23    The IRS argues that Mertes is impermissibly expanding her FOIA request because she only
24 asked for the Form 709. The IRS also argues that adopting Mertes's position would require the
25 IRS to conduct additional searches for documents that are incorporated by reference.
26     First, the Court does not agree that Mertes is improperly expanding her request. The IRS's
27 argument assumes that the Form 706 is wholly separate and distinct from the Form 709. But that

---

[4] The Court does not know whether Mertes submitted an IRS Form 706 in 2012.

1 is the point of the entire dispute. If the Form 706 can fairly be considered to be an integral part of
2 the Form 709 in this instance, then Mertes is not improperly expanding her request.

3       Second, the indication before the Court is that the Form 706 and Form 709 were stored
4 together, and the Form 706 was the only attachment to the Form 709. Further, the Form 706 was
5 clearly referenced in the Form 709 and was intended to provide requested necessary information.
6 Finally, in the context of e-mails, it is not uncommon for Courts to require production of
7 attachments that are explicitly referenced or discussed in the body of the e-mail. E.g. Judge
8 Rotenberng Educ. Ctr., Inc. v. United States FDA, 376 F.Supp.3d 47, 61-62 (D.D.C. 2019). Given
9 these considerations, the Court cannot conclude that the IRS would suffer any adverse
10 consequences in terms of cost, efficiency, or resource allocation by treating the Form 706 as part
11 of the Form 709 in this instance.

12                          (6)    Public Confidence

13       The Court believes that public confidence would suffer if the Form 706 were treated as a
14 separate and thus, non-responsive document. To rely strictly on the general character of IRS
15 Forms 706 and 709 as being separate documents is procrustean and ignores the facts of this case.
16 Again, the Form 706 is referenced in the Form 709, is attached to the Form 709, provides and was
17 intended to provide requested necessary information for purposes of the Form 709, and Mertes
18 seeks the Form 709 because she believes it is fraudulent and that she is the victim of identity theft.
19 Under those circumstances, and to further the goals of transparency and trust, the public would
20 surely expect the IRS to include the Form 706 as part of the "responsive document" in this case.

21                          (7)    Conclusion

22       Assuming that the DOJG applies in this case, the Court concludes that those guidelines
23 firmly support treating the Form 706 as part of the Form 709 and thus, as a single record. The
24 responsive document in this case is the Form 709, which includes the Form 706.

25           b.    E-mail Cases

26       There is no per se rule that e-mails and their attachments are to be considered as a single
27 record. Judge Rotenberng Educ., 376 F.Supp.3d at 61; Coffey v. BLM, 277 F.Supp.3d 1, 8 (D.
28 D.C. 2017). Nevertheless, at a minimum e-mail attachments should reasonably be considered part

1  and parcel of the e-mail by which they were sent when the email explicitly references or discusses
2  the attachment. Justice Rotenberng Educ., 376 F.Supp.3d at 61-62; New Orleans Workers' Ctr.
3  for Racial Justice v. United States ICE, 373 F.Supp.3d 16, 44 (D. D.C. 2019); Coffey, 277
4  F.Supp.3d at 8; cf. Parker, 278 F.Supp.3d at 451-52 (treating a letter and an attachment to the
5  letter as a single document where the letter referred to the attachment and invited the recipient to
6  review the attachment). The ordinary application of this rule "leaves very little wiggle room in
7  generally requiring an email with attachments to be kept together as a single record." Justice
8  Rotenberng Educ., 376 F.Supp.3d at 62.

9      Here, as explained above, the Form 706 is expressly referenced and relied upon in the
10 Form 709 and provides information that is necessary to evaluate any gift tax that may be owed.
11 Application of the rule regarding e-mails and their attachments leads to an obvious conclusion --
12 the Form 706 and Form 709 in this case constitute a single record. Justice Rotenberng Educ., 376
13 F.Supp.3d at 61-62; New Orleans Workers' Ctr., 373 F.Supp.3d at 44; Coffey, 277 F.Supp.3d at 8;
14 cf. Parker, 278 F.Supp.3d at 451-52.

15         c.    Conclusion

16     There is no dispute that the "four corners" of the Form 709 has been produced. However,
17 the Form 706 is a part of the Form 709 and has not been produced. Because, under the facts of
18 this case, the Form 706 and the Form 709 are essentially a single document, the case is not moot
19 through the production of the "four corners" of the Form 709.

20         3.    Outstanding Matters

21     Prior to the production of the unredacted Form 709 (except of course the attached Form
22 706), the Court had ordered the IRS to identify the specific FOIA exemption that it contends
23 applies in this case, to identify the "mechanism" through which it obtained the Form 709, and to
24 describe the administrative sequence whereby Mertes was requested to ratify the Form 709. See
25 Doc. No. 31. Because the case is not moot, that obligation remains. Given the briefing in this
26 matter and the production of the unredacted "four corners" Form 709, the Court will again extend
27 the date by which the IRS is to publicly identify the above described information. Following
28 compliance by the IRS, the Court will give Mertes the opportunity to file a supplemental

opposition to the IRS's motion for summary judgment and give the IRS the opportunity to file a reply.  Once the supplemental summary judgment briefing has been received, the Court will either issue a ruling on the motion or set a hearing date on the summary judgment motion.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. This case is not mooted by the production of the Form 709 without the attached Form 706;
2. This case remains active and pending;
3. Within fourteen (14) days of service of this order, the IRS shall submit a supplement, consistent with the July 24, 2020 Order (Doc. No. 26) and the Order of Clarification (Doc. No. 31), to the re-noticed summary judgment motion;
4. Within fourteen (14) days of service of the IRS's supplement, Plaintiff may file an opposition to the re-noticed summary judgment motion;
5. Within seven (7) days of service of Plaintiff's opposition, the IRS shall file a reply; and
6. If, after receiving the parties' submissions, the Court determines that a hearing on the re-noticed summary judgment would be helpful, the Court will set a hearing date at that time.

IT IS SO ORDERED.

Dated:   January 25, 2021                              _____
                                                       SENIOR  DISTRICT  JUDGE